UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS LANDRY,

                              Plaintiff,

                    -v.-

METROPOLITAN LIFE INSURANCE COMPANY,

                              Defendant.

19 Civ. 3385 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

        Plaintiff Thomas Landry brings this action pursuant to Section 502 of the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

§ 1132(a)(1)(b), to obtain judicial review of the calculation of the long term

disability ("LTD") benefits to which he is entitled under the employee benefits

plan (the "Plan") of his former employer, Baker Hughes, Inc.  Defendant

Metropolitan Life Insurance Company ("MetLife" or "Defendant") is the Claims

Administrator of the Plan.  Plaintiff has received monthly LTD benefits since

September 2015, but in an amount substantially less than what he believes he

is owed.  He now seeks recoupment of past benefits and adjustment of his

benefits going forward.  In the alternative, Plaintiff asks that the matter be

remanded to MetLife for reconsideration of his benefits calculation.  MetLife, in

response, contends that Plaintiff's claim is barred by a contractual three-year

suit limitation provision and that, even if not barred, Plaintiff's claim should

not succeed because MetLife is entitled to deference in its benefits calculation

and its calculation is supported by the administrative record.  Now before the

Court are the parties' cross-motions for summary judgment.  For the reasons

that follow, the Court denies Defendant's motion for summary judgment and grants Plaintiff's motion insofar as it remands the matter to MetLife for a full and fair review of Plaintiff's appeal, consistent with ERISA regulations regarding claims procedures, 29 C.F.R. § 2560.503-1.

BACKGROUND[1]

## A.    Factual Background

### 1.    Plaintiff's Claim for LTD Benefits

Prior to his disability, Plaintiff was an employee of Baker Hughes, working as an Oil Field Equipment Mechanic.  (Pl. 56.1 ¶ 1).  Plaintiff's last day

---

[1]    The facts stated herein are drawn from the parties' submissions in connection with the instant motions.  Defendant's Rule 56.1 Statement of Material Facts is referred to as "Def. 56.1" (Dkt. #33-1); Plaintiff's Rule 56.1 Statement of Material Facts is referred to as "Pl. 56.1" (Dkt. #34-1); Defendant's Response to Plaintiff's Rule 56.1 Statement is referred to as "Def. 56.1 Resp." (Dkt. #37-1); and Plaintiff's Response to Defendant's Rule 56.1 Statement and Additional Statement of Facts is referred to as "Pl. 56.1 Resp." (Dkt. #38-2).  The Baker Hughes Long Term Disability Plan is referred to as the "Plan" (Dkt. #33-4; Dkt. #34-13), and the Baker Hughes Health & Welfare Summary Plan Description is referred to as the "SPD" (Dkt. #33-5; Dkt. #34-4, 34-5).  Defendant's administrative record of Plaintiff's claim is referred to as the "AR" (Dkt. #33-6 to 33-19).

Citations to the parties' Rule 56.1 Statements incorporate by reference the documents cited therein.  *See* Local Rule 56.1(d).  Generally speaking, where facts stated in a party's Local Rule 56.1 Statement are supported by testimonial or documentary evidence, and are denied with only a conclusory statement by the other party, the Court finds such facts to be true.  *See* Local Rule 56.1(c), (d); *Biberaj* v. *Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." (internal quotation marks omitted) (quoting *T.Y.* v. *N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009))).

For ease of reference, the Court refers to the parties' opening briefs as "Def. Br." (Dkt. #33-2) and "Pl. Br." (Dkt. #34-2); to their opposition briefs as "Def. Opp." (Dkt. #37) and "Pl. Opp." (Dkt. #38); and to their reply briefs as "Def. Reply" (Dkt. #40) and "Pl. Reply" (Dkt. #41).  Plaintiff filed an Amended Memorandum of Law in Support of His Motion for Summary Judgment (Dkt. #46) and a Corrected Response to Defendant's Motion for Summary Judgment (Dkt. #49), both making non-substantive changes to the documents they modified.  For simplicity, the Court relies on the originally-filed version of each of these documents.

of work at Baker Hughes was March 3, 2015; his disability was registered as of March 4, 2015.  (Def. 56.1 ¶ 16).  Upon becoming disabled, Plaintiff received short term disability benefits administered on behalf of Baker Hughes by Sedgwick.  (*Id.* at ¶¶ 2, 22; *see also* AR 11-54).  Based on information provided by Baker Hughes, Sedgwick calculated Plaintiff's base wage for purposes of benefits calculation to be approximately $130,000 per year.  (*See* AR 44-45).

Defendant acknowledged receipt of Plaintiff's LTD claim on July 13, 2015.  (Def. 56.1 ¶ 14).  Plaintiff submitted supporting documentation for his claim to MetLife on or about July 16, 2015.  (*Id.* at ¶ 1; *see also* AR 83-108).  By letter dated September 21, 2015, Defendant notified Plaintiff that his LTD benefits claim had been approved, with a date of disability of March 4, 2015, and an effective date of benefits of September 2, 2015.  (Def. 56.1 ¶ 24; Pl. 56.1 ¶ 4).

### 2. The Terms of Baker Hughes' LTD Plan

The Plan grants to Baker Hughes as the LTD Plan Administrator, and to MetLife as Plan fiduciary in the role of Claims Administrator, discretionary authority to interpret the terms of the Plan and to determine eligibility for benefits.  (Def. 56.1 ¶¶ 3, 7, 10).  The Plan provides that "[a]ny interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious."  (*Id.* at ¶ 7).  As Claims

Administrator, MetLife adjudicates LTD claims under the Plan, subject to the overall authority of Baker Hughes as Plan Administrator.  (*Id.* at ¶¶ 9-10).

Under the Plan, a disabled employee who participates in the "Core Plan" for LTD income insurance is entitled to receive "50% of the first $30,000 of Your Predisability Earnings, subject to the INCOME WHICH WILL REDUCE YOUR DISABILITY BENEFIT section," up to a maximum of $15,000 per month. (Plan 18).  An employee who participates in the "Buy Up Plan" is entitled to receive "60% of the first $25,000 of Your Predisability Earnings, subject to the INCOME WHICH WILL REDUCE YOUR DISABILITY BENEFIT section," up to a maximum monthly benefit of $15,000.  (*Id.*).  "Predisability Earnings" is defined as "gross salary or wages, as reported in the payroll system, that You were earning from the Policyholder as of Your last day of Active Work before Your disability began."  (*Id.* at 22).  The Plan specifies that "Predisability Earnings" includes:

- Field pay; and
- contributions You were making through a salary reduction agreement with the Policyholder to any of the following:
    - an Internal Revenue Code (IRC) Section 401(k), 403(b) or 457 deferred compensation arrangement;
    - an executive non-qualified deferred compensation arrangement; and
    - Your fringe benefits under an IRC Section 125 plan.

4

The term does not include:

- commissions;
- awards and bonuses;
- overtime pay;
- car allowance;
- housing allowance;
- lead pay;
- cell pay;
- machine pay;
- shift differentials;
- the grant, award, sale, conversion and/or exercise of shares of stock or stock options;
- the Policyholder's contributions on Your behalf to any deferred compensation arrangement or pension plan; or
- any other compensation from the Policyholder specifically mentioned above.

(*Id.*).  Income discussed in the "INCOME WHICH WILL REDUCE YOUR DISABILITY BENEFIT" section includes: disability or retirement benefits under the federal Social Security Act, Railroad Retirement Act, any state or public employee retirement or disability plan, or any pension or disability plan of any other nation or political subdivision thereof; any income received for disability or retirement under the Policyholder's Retirement Plan, to the extent that it can be attributed to the Policyholder's contributions; any income received for disability under a range of specified laws and programs; any income received from working while disabled, subject to the provisions of the "Rehabilitation Incentives" section of the Plan; and recovery amounts received for loss of

income as a result of claims against a third party by judgment, settlement, or otherwise, including future earnings. (*Id.* at 35).

The Plan contemplates a binary decision regarding a claim: MetLife will either approve or deny the claim. (*See* Plan ERISA Information). In either case, the employee will receive written notice of MetLife's decision. (*See id.*). In the case of a denial in whole or in part, the notification is supposed to include:

> the reason why your claim was denied and reference the specific Plan provision(s) on which the denial is based. If the claim is denied because MetLife did not receive sufficient information, the claims decision will describe the additional information needed and explain why such information is needed. Further, if an internal rule, protocol, guideline or other criteria was relied upon in making the denial, the claims decision will state the rule, protocol, guideline or other criteria or indicate that such rule, protocol, guideline or other criteria was relied upon and that you may request a copy free of charge.

(*Id.*).

To appeal a denial, an employee must submit a written appeal to MetLife within 180 days of receiving the denial notice and provide the employee name, name of the LTD plan, reference to the initial decision, an explanation of the reason(s) for the appeal, and additional documentation in support of the request. (Plan ERISA Information). The review on appeal is supposed to consider all information and documentation provided with the written appeal, "without regard to whether such information was submitted or considered in the initial determination," and the reviewer of the appeal will not be the same person or subordinate to the person who made the initial decision on the claim.

(*Id.*).  In response to an appeal, MetLife is supposed to provide a written notice

of its decision within 45 days, with the possibility of extension for special

circumstances.  (*Id.*).  If the decision on appeal is a denial, the notice will

contain additional information regarding the basis for denial.  (*Id.*).

Finally, the Plan provides that "[a] legal action on a claim may only be

brought against [MetLife] during a certain period.  This period begins 60 days

after the date Proof [of claimant having satisfied the conditions and

requirements for benefits] is filed and ends 3 years after the date such Proof is

required."  (Plan 44).[2]

### 3.    Terms of the Summary Plan Description

At the time he applied for LTD benefits, Plaintiff possessed a copy of a

document called the Baker Hughes Health & Welfare Summary Plan

Description (the "SPD").  (Pl. 56.1 ¶ 11; Def. 56.1 Resp. ¶ 11).  The SPD

describes the various Baker Hughes Health & Welfare benefits plans, including

the LTD benefits plan.  (*See generally* SPD).  The SPD indicates that "[t]he

actual eligibility requirements, benefits, terms, conditions, limitations, and

provisions that govern these plans are contained in the plan documents or

---

[2]    The Plan also includes a "Statement of ERISA Rights" section, which explains claimants'
appeal rights under ERISA in generic terms.  The rights described include the rights to
know why a benefit was "denied or ignored in whole or in part," "to obtain copies of
documents relating to the decision without charge, and to appeal any denial, all within
certain time schedules."  (Plan Statement of ERISA Rights).  The Statement further
advises the claimant that under ERISA, if "a claim for benefits … is denied or ignored,
in whole or in part, [the claimant] may file suit in a state or Federal court."  (*Id.*).

group insurance contracts," and that "[i]n the case of any dispute, the information in the plan documents or contracts will prevail." (SPD Preamble).

The SPD purports to summarize the terms of the Plan's LTD disability benefits, including the difference between "core" and "buy-up" coverage, the cost of the plan, coverage and payment timelines, the schedule of benefits, incentives and limitations on benefits, and the claim filing and appeals processes. As relevant here, the SPD states that core coverage provides 50% of pre-disability earnings, and buy-up coverage provides 60% of pre-disability earnings. (SPD 176). In both cases, the maximum monthly benefit is $15,000. (*Id.*). Mirroring the Plan, the SPD defines "pre-disability earnings" as "gross salary or wages, as reported in the payroll system, that you were earning from Baker Hughes as of your last day of active work before your disability began." (*Id.*). It also lists other disability income benefits or sources of income that may reduce the LTD benefits an employee is entitled to receive from Baker Hughes. (*Id.* at 177).

The SPD further provides guidance on how MetLife will handle an LTD disability claim and the method by which an employee may appeal MetLife's denial of a claim. (SPD 187-89). This section echoes in substance the details provided in the Plan, with some minor differences. (*Compare id.*, *with* Plan ERISA Information). In particular, the SPD states that an appeal denial notice will contain, in addition to information about the basis for denial, "a statement of your right to bring a civil action in court under Section 502(a) of ERISA" and

8

a statement that other voluntary alternative dispute resolution mechanisms may be available to resolve disputes.  (SPD 189).  The SPD also alerts claimants that "[i]f MetLife fails to follow the claims appeals procedures as outlined …, [claimants] will have the right to bring a civil action in court."  (*Id.*).

In a section at the end of the SPD titled "Important Plan Information," the SPD explains that "Baker Hughes Incorporated, the Plan Administrator, has discretionary authority to interpret plan provisions, construe unclear terms, determine eligibility for benefits, and otherwise make all decisions and determinations regarding administration of the Baker Hughes Health & Welfare benefit plans," and that "[b]y participating in the plan, [employees] agree to accept the Plan Administrator's authority."  (SPD 274).  Additionally, "[s]ubject to Baker Hughes's overall authority as Plan Administrator, the Claims Administrator has discretionary authority to interpret plan provisions and is the named fiduciary to determine benefit claims."  (*Id.*).  Discussing benefits claims disputes generally, the SPD states that a claimant "may not file suit in court or seek arbitration concerning a claim for benefits until [he has] exhausted [his] claims and appeals procedures under the plan."  (*Id.* at 279).  Furthermore, a claimant "may not bring any action (whether litigation or arbitration) pertaining to a claim for benefits under the plan following the earlier of [i] 365 days after the final denial of [a] claim for benefits, or [ii] the applicable limitations period under ERISA[.]"  (*Id.*).

### 4.    Calculation and Payment of Plaintiff's Benefits

After confirming with Baker Hughes that Plaintiff held "buy-up" LTD coverage under the Plan (*see* AR 178), MetLife determined that Plaintiff was entitled to receive 60% of his pre-disability earnings (Def. 56.1 ¶ 25).  MetLife's database reflected that Plaintiff's pre-disability earnings were $130,062.40. (AR 82).  Plaintiff informed Defendant that he believed his relevant pre-disability earnings were approximately $420,000.00.  (Def. 56.1 ¶ 18; AR 182). Defendant subsequently received confirmation from a Baker Hughes representative that Baker Hughes considered Plaintiff's relevant income for benefit-calculation purposes to be $130,062.40.  (Def. 56.1 ¶¶ 19-21; AR 181). Dividing this into a monthly salary and multiplying by 60%, Defendant calculated Defendant's monthly LTD benefit as $6,503.12.  (Def. 56.1 ¶ 25). Plaintiff's LTD benefits were subsequently reduced by the amount of Social Security income Plaintiff received, resulting in a monthly benefit from MetLife of $3,801.12.  (*See* AR 714-17).  Plaintiff never filed a written appeal of the benefit determination in accordance with the instructions set forth in the Plan and SPD for appeals of benefit denials.  (*See generally* AR).

On or about October 15, 2018, Defendant communicated with Plaintiff by phone regarding a potential buyout offer of his LTD benefits claim.  (Def. 56.1 ¶ 30).  On October 23, 2018, Defendant sent Plaintiff a letter explaining the terms of its offer for a lump-sum settlement of Plaintiff's claim.  (Pl. 56.1 ¶ 13; AR 1118-19).  The settlement offer amount was calculated based on

Plaintiff's entitlement to a monthly benefit of $3,801.12 through June 25, 2035.  (AR 1118).  Plaintiff did not accept the lump-sum settlement and his monthly benefits continued.  (*See id.* at 1144).

### 5. Plaintiff's Inquiry into His Benefit Amount

After receiving the settlement offer from Defendant, Plaintiff retained his present counsel.  (Pl. 56.1 ¶ 14).  By letter dated October 31, 2018, Plaintiff requested from MetLife: (i) Plaintiff's entire claim file; (ii) all information provided by Baker Hughes, or any other related entity, regarding Plaintiff's pre-disability earnings from Baker Hughes; (iii) all Plan documents; (iv) the date on which the actual contents of the policy coverage or the SPD was made available to plan participants; (v) a copy of the contract for LTD coverage between Defendant and Baker Hughes; (vi) the name of the employee benefit plan; (vii) the name and address of the Plan Administrator; (viii) the name and address of the registered agent for service of process for both the Plan and the Plan Administrator; (ix) whether the funds for any benefits paid under the Plan were paid by the insurance company, by the employer, or by some other party; (x) the amount of monthly LTD benefits Plaintiff was receiving; (xi) whether Plaintiff paid for the premiums for the coverage in question and, if so, whether the money deducted from his paycheck for his portion of the premium was paid in pre-tax or after-tax dollars; (xii) which class of Plan coverage applied to Plaintiff; and (xiii) the status of Plaintiff's claim.  (AR 1124).  By letter dated December 7, 2018, Defendant provided responses to most of Plaintiff's queries,

but directed Plaintiff to contact Baker Hughes regarding requests (iii), (iv), (xi),

and (xii).  (*Id.* at 1145).

On February 6, 2019, Plaintiff's counsel sent another letter stating:

> While MetLife is correct in stating that MetLife does not have to provide a copy of the claim file except for the event of an adverse claim decision, the fact that MetLife is not paying what we believe to be the full benefit amount that Mr. Landry is entitled to, constitutes an adverse claim decision because we believe he is owed a higher benefit amount.   Therefore, Mr. Landry is entitled a full and complete copy of his claim file.

> To substantiate Mr. Landry's claim that MetLife is currently paying and has failed to previously pay the full benefit amount of his disability claim, we have enclosed [Plaintiff's W-2 for tax year 2013 and pay stubs from Baker Hughes from December 22, 2013, to December 20, 2014,] as evidence of his pre-disability earnings.  Sixty percent (60%) of these earnings results in a benefit amount significantly higher than the $6,503.12 monthly amount that MetLife alleges his payment to be.  As such, please review Mr. Landry's monthly benefit amount, reinstate the correct ongoing amount, and forward the resulting back-payments to our office.   Additionally, please notify us of any mandatory administrative remedies Mr. Landy must fulfil before bringing suit to recover the full benefit owed.

(AR 1158).  Plaintiff's 2013 W-2 indicates that he earned $407,597.51 in wages

from Baker Hughes that year (*id.* at 1161), and his pay stub for the pay period

ending December 20, 2014, indicates that he earned $412,574.39 in gross

wages in the year to date (*id.* at 1187).  The letter also reiterated Plaintiff's

request for information from Defendant, including information Defendant

previously directed Plaintiff to obtain from Baker Hughes.  (*Id.* at 1159).

12

**B.      Procedural History**

Plaintiff filed the Complaint in this action on April 16, 2019.  (Dkt. #1).
After being granted an extension of the answer deadline (Dkt. #12), Defendant
filed its Answer on June 27, 2019 (Dkt. #14).  The Court held the initial pretrial
conference on August 27, 2019, and thereafter the parties commenced
discovery.  (*See* Minute Entry for August 27, 2019).  On December 30, 2019,
the Court endorsed the parties' proposed briefing schedule for anticipated
cross-motions for summary judgment.  (Dkt. #31).  The parties notified the
Court on March 4, 2020, that efforts to reach a settlement had been
unsuccessful and that they would proceed with the scheduled summary
judgment motion practice.  (Dkt. #32).

On April 15, 2020, the parties each filed a motion for summary judgment
and supporting materials.  (Dkt. #33-34).  The parties filed their opposition
memoranda on May 20, 2020 (Dkt. #37-38), and their reply materials on
June 5, 2020 (Dkt. #40-42).  Plaintiff filed a corrected memorandum of law in
support of his motion for summary judgment on June 9, 2020 (Dkt. #46), and
a corrected opposition memorandum on September 29, 2020 (Dkt. #49).  The
parties' cross-motions are now fully briefed and ripe for resolution.

## DISCUSSION

### A.   Motions for Summary Judgment Under Federal Rule of Civil Procedure 56

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).[3]  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted).  A fact is "material" if it "might affect the outcome of the suit under the governing law[.]"  *Anderson*, 477 U.S. at 248.

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex*, 477 U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts,"

---

[3]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

*Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  Rather, the non-moving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  In considering "what may reasonably be inferred" from evidence in the record, however, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting *County of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)).  Moreover, "[t]hough [the Court] must accept as true the allegations of the party defending against the summary judgment motion, … conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita,* 475 U.S. at 587; *Wyler* v. *United States*, 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

**B.     Timeliness of Plaintiff's Action**

The Court first considers Defendant's argument that Plaintiff's claim is barred by the legal action limitation provision in the Plan.  (*See* Def. Br. 12-15). In particular, Defendant argues that Plaintiff's claim for alleged miscalculation of his LTD benefits accrued in September 2015, when Plaintiff began receiving his benefits, and expired under the three-year contractual limitations period in September 2018; thus, this suit was untimely when brought in April 2019.  (*Id.* at 14-15).  Plaintiff disputes that the three-year limitation in the Plan is binding on him because he was not provided a copy of the Plan until this litigation and the SPD does not contain the three-year limitation provision.  (Pl. Opp. 19-22).  Since he was not on notice of the contractually-shortened limitations period, Plaintiff argues, New York's six-year statute of limitations should apply instead.  (*Id.* at 22).  The Court agrees with Plaintiff and finds that the limitation provision in the Plan does not preclude this suit.

Section 502 of ERISA, pursuant to which Plaintiff brought this suit, does not itself contain a limitation provision establishing the period of time within which a claimant must bring an action.  *See* 29 U.S.C. § 1132(a)(1)(B).  In lieu of an ERISA-specific limitations period, courts normally apply the limitations period specified "in the most nearly analogous state limitations statute."  *Burke* v. *PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (per curiam).  The Second Circuit has determined that "New York's six-year limitations period for contract actions … is most analogous to § 1132

actions." *Id.* However, "[a]bsent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period … as long as the period is reasonable." *Heimeshoff* v. *Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105-06 (2013).

Here, the Plan provides that "[a] legal action on a claim may only be brought against [MetLife] during [the] period begin[ning] 60 days after the date Proof [of claimant having satisfied the conditions and requirements for any benefit] is filed and end[ing] 3 years after the date such Proof is required." (Plan 44). "The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan" because "'[t]he plan, in short, is at the center of ERISA.'" *Heimeshoff*, 571 U.S. at 108 (quoting *US Airways, Inc.* v. *McCutchen*, 569 U.S. 88, 101 (2013)). "[O]nce a plan is established, the administrator's duty is to see that the plan is 'maintained pursuant to [that] written instrument.'" *Id.* (quoting 29 U.S.C. § 1102(a)(1)).

Nevertheless, Plaintiff argues that the limitation provision should not be enforced against him because he lacked notice of it. (Pl. Opp. 19).[4] In support of this position, he cites several district court decisions in which contractual

---

[4]     Plaintiff does not dispute that it was permissible for MetLife to include a shortened limitations period in the Plan or that the length of the limitations period is adequate. The Court notes that the Supreme Court and the Second Circuit, among other courts, have held that a three-year time period in which to bring a legal action under ERISA section 502 is reasonable. *See Heimeshoff* v. *Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 109 (2013) (finding a three-year contractual limitations period in an ERISA plan to be reasonable); *Burke* v. *PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 n.1 (2d Cir. 2009) (same).

limitation provisions were not enforced against plaintiffs who had no notice of them.  *See, e.g.*, *Robilotta* v. *Fleet Bos. Fin. Corp. Grp. Disability Income Plan*, No. 05 Civ. 5284 (DRH), 2008 WL 905883, at *10-11 (E.D.N.Y. Mar. 31, 2008); *Shore* v. *PaineWebber Long Term Disability Plan*, No. 04 Civ. 4152 (KMK), 2007 WL 3047113, at *8-11 (S.D.N.Y. Oct. 15, 2007); *Manginaro* v. *Welfare Fund of Local 771, I.A.T.S.E.*, 21 F. Supp. 2d 284, 294 (S.D.N.Y 1998).  He also cites the Second Circuit's decision in *Burke* v. *Kodak Retirement Income Plan*, 336 F.3d 103 (2d Cir. 2003), in which the Second Circuit approvingly referred to some of the reasoning in *Manginaro*.  (Pl. Opp. 19-20).  Defendant responds that more recent cases, namely *CIGNA Corporation* v. *Amara*, 563 U.S. 421 (2011), *Heimeshoff*, 571 U.S. at 99, and *Novella* v. *Westchester County*, 661 F.3d 128 (2d Cir. 2011), control here and compel a different outcome than that reached in the cases Plaintiff cites.  (Def. Reply 1-5).

The Court first considers Plaintiff's cited caselaw.  In *Manginaro*, a participant in an employee welfare benefit plan governed by ERISA, along with his wife, sued the benefit fund and insurance agency to recoup medical expenses incurred in caring for their son, which expenses plaintiffs believed were covered by the plan.  21 F. Supp. 2d at 292.  The plan contained a limitation provision that required any legal action regarding benefits under the plan to be brought within two years of proof of loss being required.  *Id.* at 290. Neither the fund nor the insurance company provided plaintiffs with a copy of the plan, but plaintiffs were provided with a copy of an SPD that did not

18

mention the two-year limitation provision.  *Id.* at 290-91.  Four years after the insurance agency began denying coverage of the expenses at issue, plaintiffs sued.  *Id.* at 291-92.

The district court concluded that the two-year limitation provision could not be enforced against plaintiffs because it was not contained in the SPD. 21 F. Supp. 2d at 293-95.  The court explained:

> ERISA requires that all participants and beneficiaries be provided with an SPD which details, *inter alia*, "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."  29 U.S.C. § 1022(b) (1994).  The regulations require also that an SPD "must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries" with regard to the plan's provisions. 29 C.F.R. § 2520.102-2(b) (1998).  "Thus, the statute contemplates that the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary."  *Heidgerd* v. *Olin Corp.*, 906 F.2d 903, 907-08 (2d Cir. 1990). Consistent with these principles, "courts have recognized that where the SPD does not contain a benefit forfeiture clause, then such a forfeiture contained in the underlying plan will not be enforced against a participant."  *James* v. *N.Y.C. Dist. Council of Carpenters' Benefits*, 947 F. Supp. 622, 628 (E.D.N.Y. 1996); *accord Heidgerd*, 906 F.2d at 908; *Frank C. Gaides, Inc.* v. *Provident Life & Accident Ins. Co.*, No. 95 Civ. 1273 (CPS), 1996 WL 497085, at *4-5 (E.D.N.Y. Aug. 26, 1996).

*Id.* at 293.  A fundamental premise of *Heidgerd*, on which the *Manginaro* court relied, was that "'where … the terms of a plan and those of a plan summary conflict, it is the plan summary that controls.'"  *Id.* at 295 (quoting *Heidgerd*, 906 F.2d at 908).  That was the case "even though the SPD contained a

disclaimer indicating that it 'merely purported to summarize' the plan." *Id.* (quoting *Heidgerd*, 906 F.2d at 905).   "The *Heidgerd* Court concluded that '[t]o allow the Plan to contain different terms that supersede the terms of the SPD would defeat the purpose of providing the employees with summaries.'" *Id.* (quoting *Heidgerd*, 906 F.2d at 907-08).

*Shore* and *Robilotta* adopted the *Manginaro* court's reasoning.   *See Shore*, 2007 WL 3047113, at *8-9; *Robilotta*, 2008 WL 905883, at *10.   *Burke* v. *Kodak Retirement Income Plan* discussed *Manginaro* in the context of determining whether a plaintiff must prove detrimental reliance in order to recover in a deficient SPD case.   The *Kodak* Court noted that ERISA regulations require that "any limitations or restrictions of plan benefits must not be minimized, rendered obscure, or otherwise made to appear unimportant," 336 F.3d at 110 (citing 29 C.F.R. § 2520.102-2(b)), and that "[t]he consequences of an inaccurate SPD must be placed on the employer" because "[t]he individual employee is powerless to affect the drafting and less equipped to absorb the financial hardship of the employer's errors," while "the employer … receives a substantial benefit in return: a defense against certain state law claims," *id.* at 113.   The *Kodak* Court, like the *Manginaro* court, accepted that "[w]here the terms of a plan and the SPD conflict, the SPD controls."   *Id.* at 110 (citing *Heidgerd*, 906 F.2d at 907-08).

Defendant argues that *Amara* and *Heimeshoff* invalidated this premise and the reasoning that flowed from it, thereby negating the precedential value

of *Manginaro* and its progeny.  In *Amara*, the Supreme Court assessed the
authority of the district court to order reformation of a pension plan in a
specific manner to remedy the harm purportedly caused when CIGNA changed
the terms of the plan without proper notice to beneficiaries, in violation of its
obligations under ERISA.  563 U.S. at 435-45.  In so doing, the Supreme Court
recognized the different roles played by the plan sponsor, responsible for
"creat[ing] the basic terms and conditions of the plan [and] execut[ing] a written
instrument containing those terms and conditions," and an administrator who
"manages the plan, follows its terms in doing so, and provides participants with
the summary documents that describe the plan ... in readily understandable
form."  *Id.* at 437.  The Supreme Court commented that it had "no reason to
believe that [ERISA] intends to mix the responsibilities by giving the
administrator the power to set plan terms indirectly by including them in the
summary plan descriptions."  *Id.*  Furthermore, "mak[ing] the language of a
plan summary legally binding could well lead plan administrators to sacrifice
simplicity and comprehensibility in order to describe plan terms in the
language of lawyers," thereby frustrating the purpose of summary documents.
*Id.*  Accordingly, the Court concluded, the terms of an SPD may not be enforced
under ERISA § 502(a)(1)(B) as if they are the terms of the plan itself.  *Id.* at 438.

In *Heimeshoff*, the Supreme Court addressed the question of whether a
three-year contractual limitation provision that provided for the clock to start
after proof of loss was due, rather than after exhaustion of the administrative

process, was enforceable.  571 U.S. at 102-16.  Because the claimant was

obligated to exhaust the administrative appeal process and receive a final

denial before bringing suit, the limitations period commenced before her legal

cause of action accrued.  *Id.* at 105.  In that context, the Supreme Court wrote:

> Heimeshoff's cause of action for benefits is likewise
> bound up with the written instrument.   ERISA
> § 502(a)(1)(B) authorizes a plan participant to bring suit
> "to recover benefits due to him *under the terms of his
> plan,* to enforce his rights *under the terms of the plan,*
> or to clarify his rights to future benefits *under the terms
> of the plan.*"   29 U.S.C. § 1132(a)(1)(B) (emphasis
> added).   That "statutory language speaks of '*enforc[ing]*'
> the 'terms of the plan,' not of *changing* them."  [*Amara,*
> 563 U.S. at 436].  For that reason, we have recognized
> the particular importance of enforcing plan terms as
> written in § 502(a)(1)(B) claims.

*Id.* at 108.  "Because the rights and duties at issue ... are no less 'built around

reliance on the face of written plan documents,'" the Court was obligated to

give effect to the benefit plan's limitation provision "unless [the Court]

determine[d] either that the period is unreasonably short, or that a 'controlling

statute' prevents the limitations provision from taking effect."  *Id.* at 109.  The

Supreme Court concluded that neither exception applied and thus the

provision was valid, even though in practical terms it left plaintiff with only

approximately one year following exhaustion of her administrative remedies to

bring suit.

These decisions, Defendant argues, dictate that "Plaintiff cannot seek

benefits from the Plan while avoiding its terms," regardless of any deficiencies

in the SPD.  (Def. Reply 3 (citing *Burke* v. *PriceWaterHouseCoopers*, 572 F.3d at

80 n.4 ("[A]bsent a finding of unconscionability, it would be anomalous to allow a plaintiff to maintain an action to recover a benefit which was created by and exists solely because of the terms of the Plan, while at the same time to deny effect to the conditions those same terms place upon receipt of that benefit.")). Finally, Defendant cites *Novella*, in which the Second Circuit distinguished benefit miscalculation claims from improper denial claims, and determined that the statute of limitations on a miscalculation claim begins to run "when there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation." 661 F.3d at 147.

The Court is not persuaded that *Amara*, *Heimeshoff*, and *Novella* resolve the issue presented in this case. Beginning with the last, while *Novella* plainly supports the proposition that a plaintiff's ability to bring a miscalculation claim, like his ability to bring a denial claim, is temporally limited,[5] it does not speak to whether a contractual limitation provision of which a claimant is not aware may be enforced instead of a more generous statute of limitations. There was no contractual limitation provision at issue in *Novella*; rather, the question the Second Circuit resolved was merely when plaintiff's miscalculation claim accrued to trigger New York's six-year statute of limitations. 661 F.3d at 144 ("The parties dispute, however, the time at which a pensioner can be

---

[5]     It was undisputed that the six-year statute of limitations applied to the *Novella* plaintiff's miscalculation claim. *See Novella* v. *Westchester County*, 661 F.3d 128, 144 (2d Cir. 2011) ("The parties agree that a six-year statute of limitations governs ERISA claims and that the relevant date for fixing the accrual of a miscalculation claim is when a plaintiff was put on notice that the defendants believed the method used to calculate his disability pension was correct." (internal quotation marks omitted)).

23

considered to have been put on such notice.  The issue is undecided in this

Circuit.").  Similarly, *Amara* did not concern the enforceability of a contractual

limitations period against a beneficiary who had no notice of it.  Rather, the

Supreme Court focused in that case on the authority of a district court,

purportedly acting pursuant to ERISA § 502(a)(1)(B), to alter the substantive

terms of a benefits plan in order to remedy material inaccuracies in summary

documents that disguised changes in the plan to beneficiaries' detriment.  *See*

563 U.S. at 435-38.  Furthermore, the Court left open the possibility that the

relief sought could be granted as a matter of equity under Section 502(a)(3),

and remanded that issue to the district court for consideration in the first

instance.  *See id.* at 438-45.  *Heimeshoff* is closest, but nevertheless is

distinguishable because it addresses the facial validity of a contractual

limitation provision rather than the validity as applied to a particular plan

participant.  Critically, it was undisputed in *Heimeshoff* that the plaintiff had

access to the plan document containing the limitation provision at issue.  *See*

*Heimeshoff* v. *Hartford Life & Accident Ins. Co.*, 496 F. App'x 129, 130-31 (2d

Cir. 2012) (summary order) (declining to address whether plan administrator

was required to disclose time limits for filing a civil action in benefits denial

letter because "Appellant's counsel conceded in the district court and at oral

argument that he had received a copy of the plan containing the unambiguous

limitations provision long before the three-year period for Appellant to bring the

claim had expired."), *aff'd*, 571 U.S. 99 (2013).

In short, these cases do not answer whether a limitation provision that is contained in an ERISA benefits plan but not in the corresponding SPD — in violation of ERISA regulations requiring that the SPD explain "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits," 29 U.S.C. § 1022(b) — can be enforced against a claimant who had no notice of the limitation provision.  In consequence, the Court concludes that neither *Amara* nor any of the other cases Defendant cites undermines the authority of the Court to decline to enforce a limitation provision that was not communicated to Plaintiff as required by statute and regulation.  Although *Amara* does repudiate the principle that "[w]here the terms of a plan and the SPD conflict, the SPD controls," *Kodak*, 336 F.3d at 110, that principle is not dispositive of the question at issue here.  Indeed, at least one other circuit court has determined that district courts retain the authority after *Amara* to decline to enforce an undisclosed limitations period.  *See Spinedex Physical Therapy USA* v. *United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1294 (9th Cir. 2014) ("[W]e hold that because the limitation periods were not properly disclosed in the SPDs, these provisions are unenforceable.").  The Court deems it appropriate to exercise such discretion here and will apply New York's six-year statute of limitations.[6]  Thus, this action — filed within four years of the accrual of Plaintiff's miscalculation claim — is timely.

---

[6]     The Court further notes that the SPD does contain a general limitations provision concerning legal actions, not specific to LTD benefits claims, that provides that a

## C.     Standard of Review for ERISA Benefits Claims

ERISA creates a private right of action to enforce the provisions of employee benefit plans.  *See* 29 U.S.C. § 1132(a)(1)(B).  In determining the appropriate standard of review of an ERISA benefits claim, the Supreme Court has directed that courts are to be "guided by principles of trust law," which "require courts to review a denial of plan benefits under a *de novo* standard unless the plan provides to the contrary."  *Metro. Life Ins. Co.* v. *Glenn*, 554 U.S. 105, 111 (2008) (internal quotation marks omitted) (quoting *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U.S. 101, 111-15 (1989)).  A "plan provides to the contrary by granting 'the administrator or fiduciary discretionary authority to determine eligibility for benefits[.]'"  *Id.* (quoting *Firestone*, 489 U.S. at 115).  When an administrator or fiduciary is granted discretionary authority, "'trust

---

claimant "may not bring any action (whether litigation or arbitration) pertaining to a claim for benefits under the plan following the earlier of [i] 365 days after the final denial of [a] claim for benefits, or [ii] the applicable limitations period under ERISA (which is the limitations period under Texas contract law)."  (SPD 279).  As discussed further *infra*, because Plaintiff was not denied benefits, the 365-day limitation does not apply.  Although the SPD specifies that the Texas contract law limitations period should apply, as opposed to the New York limitations period for which Plaintiff argues, Defendant does not address this issue in its briefing.  There is also a question whether the selection of the Texas limitations period is properly disclosed in accordance with ERISA regulations regarding placement within an SPD of restrictive provisions.  *See Spinedex Physical Therapy USA* v. *United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1294 (9th Cir. 2014) ("[E]ither [i] the description or summary of the restrictive provision must be placed 'in close conjunction with the description or summary of benefits,' or [ii] the page on which the restrictive provision is described must be 'noted' 'adjacent to the benefit description.'" (quoting 29 C.F.R. § 2520.102-2(b))).  In any case, the applicable Texas limitations period is four years, *see Dye* v. *Assocs. First Capital Corp. Long-Term Disability Plan 504*, 243 F. App'x 808, 809 (5th Cir. 2007) (per curiam) ("In Texas, the most analogous state statute of limitations is the four year limitation governing suits on contracts." (citing Tex. Civ. Prac. & Rem. Code § 16.004(a))), and this suit was filed within four years of Plaintiff receiving his benefits award letter.

principles make a deferential standard of review appropriate[.]'" *Id.* (quoting *Firestone*, 489 U.S. at 111).

Here, it is undisputed that the Plan grants both Baker Hughes and MetLife discretionary authority to interpret the terms of the Plan and to make benefits determinations.  (Def. Br. 4; Pl. Br. 7; *see also* Def. 56.1 ¶¶ 3, 7, 10; SPD 274).  In such circumstances, the general rule, which MetLife argues applies (*see* Def. Br. 4), is that "the administrator's decisions may be overturned only if they are arbitrary and capricious," *Roganti* v. *Metro. Life. Ins. Co.*, 786 F.3d 201, 210 (2d Cir. 2015).  "This standard is 'highly deferential,' and 'the scope of judicial review is narrow.'"  *Id.* at 211 (quoting *Celardo* v. *GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 146 (2d Cir. 2003)).

Plaintiff, however, asks this Court to review his claim *de novo*, on the ground that Defendant failed to strictly adhere to ERISA regulations when administering Plaintiff's claim.  (Pl. Br. 9-13).  Specifically, Plaintiff argues that Defendant initially "issued a decision letter that failed to provide information about how Landry could appeal that decision, what information he could submit on appeal, and the applicable deadlines for that appeal or a subsequent lawsuit," in violation of 29 C.F.R. § 2560.503-1(g).  (Pl. Opp. 3-4).  Additionally, in response to Plaintiff's inquiries through counsel between October 2018 and February 2019, Defendant allegedly "failed to provide Landry with the claim file or plan document which he specifically requested," in violation of subsection (h), and failed to provide, within the time frame set forth in subsection (i), "a

written explanation for its adverse benefit determination or include in that explanation the relevant plan terms." (Pl. Br. 10-13).

Plaintiff argues that *de novo* review is appropriate in these circumstances, citing the Second Circuit's decision in *Halo* v. *Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42 (2d Cir. 2016). As explained in *Halo*, "[u]nder ERISA, the Department of Labor's claims-procedure regulation provides the applicable standard of care, skill, and caution that plans must follow when exercising their discretion. Under trust law principles, then, courts may 'interpose' — *i.e.*, review a claim *de novo* — if they fail to do so." 819 F.3d at 52. "[I]f plans comply with [29 C.F.R. § 2560.503-1], which is designed to protect employees, the plans get the benefit of both an exhaustion requirement and a deferential standard of review when a claimant files suit in federal court…. But if plans do not comply with the regulation, they are not entitled to these protections." *Id.* at 56.

MetLife responds that the Plan's claims procedures were clear and consistent with ERISA requirements, that it timely adjudicated Plaintiff's 2015 LTD claim and approved his benefits, and that Plaintiff failed to timely file a written appeal of his benefits determination, which appeal would have triggered the sort of response Plaintiff faults Defendant for not providing. (*See* Def. Opp. 13-14). Thus, in Defendant's view, it complied with the ERISA regulation's requirements, *Halo* is inapposite, and the Court should apply arbitrary and capricious review. (*See id.* at 12-13; Def. Reply 8-9).

28

Plaintiff's first argument — that MetLife violated ERISA regulations by issuing a decision letter lacking information about the appeal process — is without merit because such information is required in a decision notice only when a plan administrator has made an "adverse benefit determination." *See* 29 C.F.R. § 2560.503-1(g). The regulation defines "adverse benefit determination" as "[a] denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan[.]" *Id.* at § 2560.503-1(m)(4)(i). None of these circumstances applies. MetLife *approved* Plaintiff's claim for LTD benefits, at a monthly rate it calculated based on the wage figure Baker Hughes, as Plan Administrator, determined to be appropriate under the Plan. (*See* AR 181, 218-20). MetLife did not deny, reduce, or terminate Plaintiff's benefits in 2015,[7] and there is no allegation or evidence that Defendant ever failed to pay Plaintiff the monthly amount to which Plaintiff was entitled under Defendant's approval determination. Nevertheless, Plaintiff argues that because MetLife knew that Plaintiff believed his benefits should have been calculated based on an income of approximately $420,000 (rather than $130,062.40 as indicated by Baker Hughes), Defendant effectively made an adverse determination and was

---

[7]     MetLife did subsequently reduce Plaintiff's benefit amount to offset Social Security income (*see* AR 714-17), but Plaintiff does not challenge that decision or the contents of the notice informing him of that decision.

29

therefore obligated to abide by regulations governing such determinations.  (Pl.

Opp. 5).  But Plaintiff cites no basis in statute, regulation, or caselaw for his

position, and the Court finds it unpersuasive.  It was reasonable for MetLife to

consider its decision to provide to Plaintiff the full measure of benefits it

determined him to be entitled to under the Plan an "approval" and to notify him

accordingly.  Thus, *de novo* review is not warranted based on this alleged

violation of Section 2560.503-1(g).

      However, the Court finds more compelling Plaintiff's argument that

Defendant violated 29 C.F.R. § 2560.503-1(h) by failing to provide Plaintiff with

his claim file and with the Plan document upon his request as part of the

administrative appeal process, and, further, that Defendant violated subsection

(i) by not timely responding to Plaintiff's appeal.  Subsection (h) provides that

ERISA beneficiaries must "have a reasonable opportunity to appeal an adverse

benefit determination to an appropriate named fiduciary of the plan, and under

which there will be a full and fair review of the claim and the adverse benefit

determination."  29 C.F.R. § 2560.503-1(h)(1).  Among the prerequisites for an

appeal process to be considered "full and fair" is that "a claimant shall be

provided, upon request and free of charge, reasonable access to, and copies of,

all documents, records, and other information relevant to the claimant's claim

for benefits."  *Id.* at § 2560.503-1(h)(2)(iii).  Subsection (i) requires a plan

administrator to notify a disability benefits claimant of the result of the appeal

review within 45 days of receipt of the appeal, unless the administrator

determines that special circumstances require an extension, in which case the administrator must notify the claimant of the extension within the initial 45-day period.  *Id.* at § 2560.503-1(i)(1)(i), (i)(3).

Plaintiff argues that the letter his counsel submitted to MetLife on February 6, 2019, should be considered his appeal of his benefits determination.  (*See* Pl. Br. 12).  Defendant was obligated to respond to this appeal on or before March 23, 2019, unless it notified Plaintiff of special circumstances requiring an extension.  Defendant neither responded to Plaintiff's appeal nor notified him of an extension by the deadline, and thus failed to comply with the terms of subsection (i).  (*See id.*).  Plaintiff filed suit several weeks later, on April 16, 2019.  In response, Defendant argues that Plaintiff's February 6, 2019 letter should not be treated as an appeal because it did not include all of the information required in a written appeal, as set forth in the Plan and SPD, and in any case was filed outside of the appeal period permitted under the Plan.  (*See* Def. Opp. 12-14).

Here, the Court agrees with Plaintiff that his February 6, 2019 letter is properly considered an appeal of his benefits determination.  *First*, the Court concludes that Plaintiff's effort to appeal the alleged miscalculation should be treated as timely.  The Plan and SPD both provide that a claimant may appeal a *denial* of benefits within 180 days of receiving MetLife's decision.  (*See* Plan ERISA Information; SPD 188).  Neither document instructs plan participants how they may appeal what they believe to be a miscalculation of their approved

benefits.  While the Court is conscious of Plaintiff's lack of diligence in pursuing his appeal, ERISA puts the onus on the plan administrator to establish and maintain reasonable procedures governing appeals and to clearly inform plan participants of those procedures.  *See* 29 C.F.R. § 2560.503-1(b). Accordingly, the burden was not on Plaintiff to bring an administrative appeal within 180 days, because of the lack of clarity in the SPD about whether his miscalculation claim could be pursued through such appeal.

Second, with respect to the substance of the appeal, the Plan requires a claimant to submit a written appeal providing the employee name, name of the LTD plan, reference to the initial decision, an explanation of the reason(s) for the appeal, and additional documentation in support of the request.  (*See* Plan ERISA Information; *see also* SPD 188).  Although Defendant faults Plaintiff for not using the word "appeal" in the letter (*see* Def. Opp. 13 n.6), this is not a magic word.  Plaintiff's February 6 letter provides Plaintiff's name and claim number, refers to Baker Hughes, states that Plaintiff believes he is not being paid the full amount of LTD benefits to which he is entitled, asks Defendant to "review Mr. Landry's monthly benefit amount, reinstate the correct ongoing amount, and forward the resulting back-payments" to counsel, and includes Plaintiff's 2013 W-2 and a year's worth of Baker Hughes pay stubs in support of his claim.  (AR 1158-59).  Under a fair reading of the document, it satisfies

the content requirements of a written appeal.[8]  Thus, per the terms of 29

C.F.R. § 2560.503-1(h) and (i), Plaintiff was entitled to a copy of the Plan

documents and a response to his appeal within 45 days.

## D.    The Court Remands the Matter to MetLife

Because Defendant failed to act on Plaintiff's requests within the time

required by ERISA, the Court agrees with Plaintiff that *Halo* provides the

relevant rule and Defendant is not entitled to review under the arbitrary and

capricious standard.  *See Halo*, 819 F.3d at 56.  However, in light of the

incompleteness of the 2015 administrative record, on which MetLife's original

benefits determination was based — and the additional evidence provided by

Plaintiff in this litigation that calls into question the correctness of the MetLife's

determination of Plaintiff's relevant income — the Court concludes that the

appropriate course of action is to remand to MetLife to provide a "full and fair

review" of Plaintiff's appeal in the first instance.  *See Miller* v. *United Welfare*

*Fund*, 72 F.3d 1066, 1074 (2d Cir. 1995) (instructing the district court to

return the case to the defendant for reconsideration because "[t]he record [was]

incomplete and [the court] therefore [could not] conclude that there is no

possible evidence that could support a denial of benefits"); *see also Shelby*

---

[8]     Furthermore, it is not plausible that MetLife would have been confused about the
benefits plan and initial decision at issue.  The February 6, 2019 letter followed both
Plaintiff's October 31, 2018 letter, which expressly named the "ERISA Plan(s) held by
Baker Hughes" (AR 1123), as well as Defendant's December 7, 2018 response, which
stated that "Thomas Landry is currently receiving benefits as a participant in the Baker
Hughes long term disability plan" and provided the monthly benefit amount (*id.* at
1145).

*Cnty. Health Care Corp.* v. *Majestic Star Casino*, 581 F.3d 355, 373 (6th Cir. 2009) ("[W]here the plan administrator fails to comply with ERISA's appeal-notice requirements in adjudicating a participant's claim, the proper remedy is to remand the case to the plan administrator so that a full and fair review can be accomplished." (internal quotation marks omitted) (quoting *Gagliano* v. *Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240 (4th Cir. 2008))); *Easter* v. *Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*, 217 F. Supp. 3d 608, 633-34 (N.D.N.Y. 2016) ("Courts broadly agree that after review of an ERISA benefits determination, remand to a Plan Administrator or Claims Administrator is an available remedy … even following *de novo* review of benefits claims." (collecting cases)); *Cejaj* v. *Bldg. Serv. 32B-J Health Fund*, No. 02 Civ. 6141 (RMB) (MHD), 2004 WL 414834, at *10 (S.D.N.Y. Mar. 5, 2004) ("Unless the evidence in the record makes it 'clear that it would be unreasonable for the plan administrator to deny the application for benefits on any ground,' the appropriate remedy is to remand to the administrator for further consideration." (quoting *Quinn* v. *Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 477 (7th Cir. 1998), *abrogation on other grounds recognized by Huss* v. *IBM Med. & Dental Plan*, 418 F. App'x 498, 511 (7th Cir. 2011))).

## E.  Attorneys' Fees, Costs, and Prejudgment Interest

Plaintiff further requests attorneys' fees, costs, and prejudgment interest. (Pl. Br. 19; Pl. Opp. 24).  ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party," 29 U.S.C.

§ 1132(g)(1), not just the "prevailing party," *see Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010).   However, "a fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1)." *Id.* at 255 (internal quotation marks omitted).   Because the Court has determined that it is appropriate to remand Plaintiff's claim to Defendant for a "full and fair review," it would be premature to award fees, costs, and interest at this time.   Therefore, Plaintiff's application is denied without prejudice to its renewal at a later date.

## CONCLUSION

For the reasons set forth above, the parties' cross-motions for summary judgment are DENIED.   This action is remanded to MetLife as Claims Administrator for consideration of Plaintiff's appeal in accordance with this Opinion.   The Clerk of Court is directed to terminate the motions at docket entries 33 and 34.

This matter is STAYED pending exhaustion of the administrative review process.   Plaintiff is ORDERED to inform the Court in writing of the result of Defendant's review process, including any appeals, and the effect that result has on the continued viability of this action.

SO ORDERED.

Dated:        March 5, 2021
              New York, New York

                                    _____
                                       KATHERINE POLK FAILLA
                                       United States District Judge